Secretary, U.S. Department of the Interior, et al. Mr. Devine for the op-ed, Ms. Katsilis for the accolades. Mr. Devine, good afternoon. Good afternoon and may it please the Court, Joshua Devine, Deputy Solicitor for the State of Missouri. The federal government cannot take up to 9.5 billion gallons of water each year from the State of Missouri. Without Missouri at least having constitutional standing to challenge that taking. Missouri has standing for three reasons. First, Missouri has standing in its sovereign capacity to bring this suit. As states have done for hundreds of years, states routinely assume their sovereign capacity over matters of allocation or diversion of water. As Wright and Miller put it, summarizing the case law, there is no difficulty in recognizing standing to protect sovereign interests in such matters as allocation of state waters. The federal defendants do not dispute this. What they say instead is that we cannot bring the suit in our sovereign capacity, having abandoned it by not discussing this issue in the two-page response to their motion. But what they neglect to mention is that they never challenged our ability to bring a suit in our sovereign capacity, and for good reason. Indeed, nobody discussed this issue because it is legally self-evident. As North Dakota says on page 31 of their brief, and as this state of standing is legally self-evident, litigants need not brief the issue. I'd point this court to Judge Rogers' opinion in Gunpowder Riverkeeper v. FERC. That's at 807 F3rd 278. That opinion states that when standing is self-evident, legally self-evident, quote, no more is required. And the policy behind this is really quite simple. This court already deals with complex issues and voluminous briefs and does not need litigants to brief self-evident theories of standing that are borne out in the record. And it creates tremendous costs to make them do that. And I think this case well illustrates the costs of the rule that the federal defendants are asking this court to adopt. So Missouri has been involved in the suit for eight years. After eight years of building up the record and litigating this case, and indeed after the district court had already granted us an injunction, the district court then went to take a laser-like focus on two pages of the record, ignoring the rest of the record that plainly evinced this theory of standing to sue and said that because Missouri did not discuss this issue in these single two pages, that it could not bring suit in its sovereign capacity. Now, that's troubling for a number of reasons, but it also doesn't get rid of this case. All it does is force litigants like the state of Missouri to refile. This is a jurisdictional dismissal. As the district court said or held, the statute of limitations did not start running until 2015. It's a six-year statute of limitations. A jurisdictional dismissal has no res judicata effect. This doesn't even get rid of the case. All it does is force litigants like us to refile again, restarting an eight-year process or longer, just so we can say that we are suing in our sovereign capacity. This is exactly the type of theory that this court has repeatedly said need not be briefed. The second reason we have standing What's your best case for us on that? There's the, again, the case by the opinion by Judge Rogers, the gunpowder The Sierra Club versus EPA. That's right. Sierra Club is the main case, and it has been cited and expanded upon by my count four or five, 40 or 50 times. The second reason we have standing to pursue this case is, as we've stated Well, go ahead. I don't think this is as broad as you're arguing it, but if anything, it was telling people, if it isn't self-evident, you need to spend a few pages telling us why. Yes, and this is a self-evident theory of standing. It is undisputed that the whole idea of this project is to take away water from Missouri for the benefit of some communities in North Dakota. Just a little bit odd to say something self-evident when you're talking about a state injury, because you usually want to know that the state who's asserting the injury, in fact, feels injured. Yes. In the way that matters. So if you have a proprietary injury, for example, it seems a little bit odd to say, well, you don't ever have to say anything about a proprietary injury in proceedings before a district court, and then it can just be affirmed based on a theory of a proprietary injury that was never raised, because you want to be told that there's a proprietary injury that's being suffered. A couple of responses to that, Your Honor. One is that this is the suing over allocation of water is the core of sovereign interest that has been litigated for hundreds of years. When there's a dispute over allocation of water, that's usually what this that's usually the capacity in which the state sues. And second, we did say this in paragraph eight of our complaint. We said that we bring How about in your opposition to the motion for summary judgment? No, we did not. And the reason is because they did not challenge it in their motion for summary judgment. They issued a On the basis on which the district court concluded that there was no other theory urged? That is how the district court ruled. The federal defendants discussed the parents' pottery issue alone. We agree that the parents' pottery issue is not self-evident, which is why we responded to the parents' pottery issue. Now, the second reason why we have standing to sue is, as we stated on page 16 of our reply brief What I'm getting at is that the moving party had to show it was entitled to judgment as a matter of law, right? That is correct. So the opposing party has to say, no, you're not, for reason one. And if you move on that, reason two. If you move on that, reason three. Well, again, the Sierra Club rule is intended to not require you to we have about 150 pages of briefing on the standing issue alone here. It's intended not to create that in the district court. The second reason we have seen I think, though, with all due respect, that line of authority is addressing that when you're before the agency, article three doesn't apply. So the parties can proceed. But by the time you get into an article three court, you may have to say something. I thought that's the trustee's judgment. That's not my understanding. My understanding is that is Well, I can tell you, I think that's the way this court has interpreted that. But I think these Sierra Club itself says that. Yes, I think Sierra Club and many other cases are talking about when whether the individual has to brief the standing issue in this court, because this court is usually the first time where they have to assert and prove standing. This court has said these self-evident theories of standing need not be briefed. Now, moving into the second reason we have standing, as we stated on page 16 of our reply brief, the district court has granted us an injunction. The Supreme Court case Salazar v. Biono, that's page 559 U.S. 700, states that when a party has an injunction, they have standing to sue to enforce that injunction. And that's what we've done here. This is, again, another very straightforward way why we have standing. And the most complicated way why we have standing is that we have standing to bring the suit in our parents' pottery capacity. So can I just go back to the district court for a moment, so I'm clear? The Supreme Court has said on a motion for summary judgment, as I recall, the district court does not have to scan the record to see what the arguments are and who might prevail. It's up to the parties to alert the court. So there was a complaint. Then the motion for summary judgment comes in. The judge rules on that. And looking at those papers says there's no other theory in the case. Yes, and I think what we're discussing is an exception to that ordinary rule. We don't dispute that the rule you're stating is, in general, the rule. So in summary judgment, the rule you're asking for would be that while the district court doesn't have to scan the record, it does have to take into account whether something is self-evident. That's right. Exactly. Self-evident from the record. Again, nobody has ever disputed that Missouri is going to lose billions of gallons of water. That's where I'm trying to get at. Is the rule you're asking for, the district court has to scan the record? No, the district court does not have to necessarily scan the record. But when certain facts are borne out, these facts are borne out in the motions for summary judgment, too. It is undisputed in those motions for summary judgment that the project will divert billions of gallons of water from the state of Missouri. So even if we didn't discuss it specifically on those two pages, we did discuss it throughout. So even if that is true, any taking, whether or not there is any harm to the state is sufficient? Oh, the taking of water is itself the primary principal harm to the state. Now, there are other derivative effects that we have discussed, but the taking of up to nine and a half billion gallons of water is the principal harm. Just suppose hypothetically the state of Missouri says, the fact you're taking a bucket of water, it's ours and we care about it, but we don't feel injured. I have two responses to that, Your Honor. One is you're not going to see that nobody's going to spend thousands or hundreds of thousands of dollars soon over a bucket of water. And two, case after case, I've recognized that even a trifle of an injury is sufficient to establish injury in fact. In that circumstance, maybe it would not be self-evident. What's your trifle case? National Wildlife Federation against Hodel. That's 839 F. 2nd, 694. The Supreme Court has recognized standing when somebody sued over as little as $1.50, for example. Now, we also have standing to bring suit in our parents' pottery capacity because we fall within a well-recognized exception to the ordinary bar and because the APA itself removes the prudential bar against bringing parents' pottery suits against the federal government. So the case law creates a crucial distinction. A state cannot bring a parents' pottery suit against the federal government to challenge the constitutionality of an act, but it can to enforce a congressional act. And the reason is quite simple. As the Georgia against Pennsylvania Railroad case states, Mellon concerns only the distribution of powers between the state and the national government. Here, we're not asserting that we should have more legislative powers than Congress. We're in fact trying to seek to vindicate congressional will. And that is the crucial distinction between what Mellon prohibits and what Massachusetts against EPA permits. Now, they try to, the federal defendants try to distinguish this case by saying that, well, Massachusetts against EPA is really just a proprietary interest case. But they're confusing the difference between the injury, in fact, and the capacity in which you can sue to vindicate that injury. So in Massachusetts against EPA, you have changes in water level, which is exactly what we have here. And then the Supreme Court, in footnote 17, so the Supreme Court says you can sue in your proprietary interest. And then footnote 17 also says you can sue in your parents' pottery capacity. And we've cited more than a dozen cases that have recognized this exception. So you don't dispute that in Massachusetts EPA, the proprietary interest was at least part of the argument for standing? We think Massachusetts against EPA said that they could pursue both those capacities for the crucial distinction that we are making here. We cited six cases that fall between Mellon and SNAP, including a Supreme Court case. We cited five cases that fall between SNAP and Massachusetts against EPA, again, including a Supreme Court case. And we cited three cases since Massachusetts against EPA that have expressly held that Massachusetts against EPA rejects the very rule that the federal defendants are arguing for here. Really briefly, I'd like to say that the APA, that the APA also removes the bar to parents' pottery standing, because as many cases have said, when a statute uses terms like any person agreed to may sue, then the statute authorizes statutory standing to the full extent allowed by the Constitution. And the bar against bringing parents' pottery suits is prudential, not constitutional. So is that, then your view is that the, well, the bar against bringing parents' pottery suits is only one that applies when a state is bringing the suit as against the federal government? Yes. And that's what we're talking about. And so your view is that because of the existence of the APA, as long as, and because the APA accommodates the understanding that a state is a party for APA purposes, then that that bar just doesn't apply anymore. Right. That is the logic of Maryland People's Council, the case you cited. It's just gone, period. There's no such thing as the bar anymore. Right. That's your view. All right. Ms. Katselis. Good afternoon, and may it please the Court, Anna Katselis for the Bureau of Reclamation. With me at council table today is Vanessa Horwich-Coppinger on behalf of the State of North Dakota. I will argue for the appellee's full 15 minutes today. However, Ms. Coppinger is available to answer any questions the Court may have for her. The Northwest Area Water Supply Project is a decades-old effort to provide a new source of much-needed, high-quality drinking water for approximately 81,000 people in the State of North Dakota. It will do so by transferring, on average, 0.0136 million acre-feet of water, which amounts to less than two one-hundredths of a percent of the Missouri River main stem system's total capacity from the Missouri River Basin to the Hudson Bay Basin for delivery. The main stem system is the largest reservoir system on the continent, with a current capacity of more than 72 million acre-feet. I'd like to turn first to the State's argument that their standing is self-evident, and they have no need to raise this issue before the District Court. That is flatly wrong. It is a plaintiff's burden in every case, regardless of whether their standing is challenged, to establish their standing with the requisite degree of proof required at the successive stage of the litigation. When you look at their complaint, the only injury that they alleged is to their citizens. They did not allege any injury to a proprietary interest. They did not allege that they own land that would be harmed by this. It's the only thing that is alleged. When we challenged their standing, and we would direct the Court to Joint Appendix, page 62, which is where we challenged their standing, and also to their response at Joint Appendix 73 and 74, we argued, as we do here, that the State alleged no harm to a sovereign or a proprietary interest, and argued that the harm it alleged to its citizens was insufficient due to the bar on parent's patriotic suits. In response, Missouri laid out the three types of interests that a State may pursue, clarified that it had standing on the basis of quasi-sovereign interests, and argued solely that it can maintain this action against the United States in a parent's patriotic capacity. Well, maybe it's so self-evident that just mentioning those other two theories means that you didn't have to claim them. Well, Your Honor, this comes close to a disavowal of those theories, and if I could read, the U.S. Supreme Court has identified three distinct State interests, the evasion of which, and I'm reading from their response, may afford a State standing. These State interests are its sovereign interest, its proprietary interest, and its quasi-sovereign or parent's patriotic interest. Missouri has standing to bring this lawsuit in its capacity as parent's patriae under the authority of the U.S. Supreme Court decisions in Georgia v. Pennsylvania Railroad Company and Massachusetts v. EPA. They specified, made clear to the District Court that they were only bringing this case in a parent's patriae capacity, and this Court has been clear, we've cited the Huron case for the fact that the forfeiture rule applies to standing to Merritt's arguments, because it is not the province of this Court to speculate on an injury that the plaintiff never raised below. And clearly, this case is unique in that this State decided, made a litigation choice to pursue only this theory. So they have clearly waived, they forfeited the argument that they can bring this case in a parent's patriae, in a sovereign capacity, and they also forfeited the argument that they can bring it in a proprietary capacity. So can we just talk for a minute about the theory that even you think that they did bring, which is the parent's patriae one? So there's a footnote, as you know well, in Mass v. EPA that is all about Federal, a State bringing an action in a parent's patriae capacity where the Federal Government is the defendant. And if that's what that footnote's all about, let's just imagine that it's not a footnote, it's in the text. It's in the statute that looks like this one. Why doesn't that mean that what was going on in Mass v. EPA is there were two legs for standing? One is the parent's patriae one, and the other one is the proprietary one. Your brief focuses exclusively on the proprietary one, and I understand why you're doing that. But it's just to the exclusion of an existence of a lengthy discussion of two meaty paragraphs and a lead-in to that discussion beforehand where the Court says that Mass does, in fact, own a great deal of the territory, only reinforces the conclusion. Harkening back to the parent's patriae one, which suggests that the parent's patriae theory was doing some work. So there's two parts of Mass v. EPA that indicate that the parent's patriae theory was actually doing work to the Court. It's the Massachusetts v. EPA, as this Court interpreted the decision, and I think explained it very well in Center for Biological Diversity, which we've cited in our brief, but certainly there are three things that are happening there. The Court afforded special solicitude to the state due to the fact that it was a state, and as you mentioned, it has these sovereign interests. Its discussion there really sounds like it's talking about sovereign interests, the interest in its territory, and also the procedural right in the Clean Air Act to petition for review, and then also the injury. I think what's difficult, and when you look at all of these cases, we have found no case, none of the cases they cite have dealt with a scenario in which a state asserted only a quasi-sovereign interest. This is highly unusual, and the only circumstance where we've found that a Court has dealt with it is in this Center for Biological Diversity case, where Point Hope alleged only that it was suing on behalf of its members. So I think that's an element. What about the Maryland People's Council, our decision in the Maryland case? That's not one? Well, those, I mean, those are, I mean, we're talking about, so I was meeting post-Massachusetts versus EPA, where you have this, because I think what's, it's hard to unpack that footnote, Your Honor, and it's, you know, and it's not solely, it's clearly not solely an interest in a parent's patriotic capacity. The Court goes on about the nature of the injury to the state, the fact that the state owns coastal land, that it operates and manages It does, but the way that footnote starts is in response to the Chief Justice's argument that the Court was misapplying Georgia, Georgia's Tennessee copper, and it would have been easy to respond to that by saying, I don't know why the Chief Justice is fixated on this, because there's a proprietary interest here that gives rise to standing. That would have been easy, and then that would have been completely on all fours with everything you're saying, and this would be an open and shut case. I think it did say it, didn't it? The very last thing in that footnote is, it rather seeks to assert its rights under the Act, and unless its modifies something other than the state itself, that's how I read it. That's correct, Judge Henderson, you're correct on that point, and this Court made that point exactly in Center for Biological Diversity. What the Supreme Court is finding here is that the state was seeking to assert its rights, and not But then later, the next sentence, the parenthetical after Nebraska versus Wyoming says, holding that Wyoming had standing to bring a class claim against the United States to vindicate its quasi-sovereign interests. So it's your position that when it says its rights under federal law, it's to the exclusion of quasi-sovereign interests that it's actually talking about proprietary interests in that footnote? It's a confusing footnote. That may be how you understand it, and that is an interpretation, I just Well, it's a confusing footnote, but I think that there's also the fact that this Court has interpreted that footnote, and this Court has interpreted that language in CBD, and we direct the Court to that, because they did talk about, CBD talks about that fact, if I can quote from it. I'm at page 476 of the opinion. The Court noted further that it was critical that Massachusetts sought to assert its own rights as a state under the Clean Air Act, and was not seeking to protect the rights of its citizens under the Clean Air Act. So that's how this Court has interpreted that footnote. And I think that, again, even unpacking that, you don't need to unpack that footnote and decide exactly what it means. It's very hard to decide, because this case is distinguishable readily from Massachusetts v. EPA, because there is no interest asserted, and there is no injury proven to the state's sovereign or proprietary interests. And so that's, and you know, again, we have looked at all of the cases I'm not sure I understood that, because it's the quasi-sovereign interests that would matter if you thought that Mass V. EPA allowed for standing based on quasi-sovereign interests, right, in a parents-patriotic state. I don't think this, that, as I just, this Court hasn't interpreted it that way. Right, so if you went on that, then we'd, then there could be a separate theory of standing which is based on proprietary interests and sovereign interests as distinguished from quasi-sovereign slash parents-patriotic interests. That I get, but on the I think, if I could step back, perhaps if I misspoke, but Massachusetts v. EPA is a unique circumstances there, and the unique circumstances included the fact of an assertion of a proprietary injury to the state. You don't have that here. And so this case is distinguishable easily from Massachusetts v. EPA. Now this Court does, on the parents-patriotic question, have decades of clear precedent. So it is a narrow exception. The idea that it is just generally available in all EPA cases is plainly inconsistent with this Court's very clear law. So, you know, Maryland People's Council is the only case in which this Court found that there, that Congress had abrogated the bar on suits against the United States. And of course that is, and these cases are in the context of challenges to federal compliance with the law, not to challenges to federal law itself. And so, of course, in the Natural Gas Act, the Court found that Congress had specifically provided for states to appear before FERC in their parents' patriotic capacity, and then to sue FERC to provide judicial review in a parents' patriotic capacity. And it stressed that its holding was a narrow one. This Court has, in 2001, in Service Employees Union, which we cite, the Court has reiterated that the parents' patriotic doctrine is a narrow doctrine. It is a narrow prudential doctrine. Yeah, I just want to make sure that conceptually I'm understanding where you are with your it should be best read in the way that you're reading it. Then Mass. v. EPA comes along afterwards. Right. Mass. v. EPA comes along afterwards, and one reading of Mass. v. EPA is the one that you have, which is that, yeah, there's a little bit of noise about parents' patriotic standing in a footnote, but really the opinion is about proprietary interests as the linchpin for standing. And what really mattered in Mass. v. EPA is it wasn't just based on parents' patriotic standing. There was also an assertion of proprietary interests, and a proprietary interest is really doing the work there. That's correct, Your Honor. That's true. And that is how this Court has interpreted it. Again, in CVD, we have a clear interpretation of that opinion. And I just want to make sure I understand. So if that is a reading of Mass. v. EPA, and I'm not saying I don't agree with that reading. I'm just saying that suppose it seems to me that there's another argument, which is that the alternate reading of Mass. v. EPA is that there was also a parents' patriotic interest asserted, which you agree with, and that that assertion did some work for standing purposes. If one were to read Mass. v. EPA that way – I'm not saying that's the way I read it. I know that's not the way you read it. If one were to read it that way, though, then Missouri would have standing here. No. No. I mean, Your Honor, even if it did some work, it didn't do enough work to get them over the hurdle. And what are they missing? What do they need to get over the hurdle, then? Well, there's a separate problem here, right? And Mass. v. EPA goes through that their submissions satisfied the most rigorous standards. You had uncontroverted affidavits that their land was being swallowed. The State of Missouri provided no declarations, Your Honor. They cited to their complaint, which alleges only a parents' patriotic injury, they provided no declarations. They've identified nothing in the record that supports their claim of injury. And that would be insufficient in any case, but particularly here, where the claims have a de minimis impact on water supply, on all of these... But you refer to the Fish and Wildlife Service report and one of the other reports that's in the record as indicating water is going to be taken from Missouri. No case holds, Your Honor, very clearly that a mere diversion is enough. Two points. Clearly, the Supreme Court has clearly rejected the argument that a procedural injury alone is And also, they've cited, you know, for example, some cases by Florida and Alabama, you know, suing over diversions. Those cases involve a diversion of nearly a quarter of a reservoir storage for one, but there is a finding of standing. But in no case in this Court is standing sort of assumed or presumed. There is a finding of an injury. It's not always clear what the basis is, but there's an injury in all cases. So without getting into the dispute about gallons versus volume, it's not a trifle from Missouri's point of view. Well, Missouri didn't make that argument, Your Honor. I mean, Missouri didn't make any argument... Well, Missouri says the whole program is designed to take water from Missouri to give it to rural North Dakota. So isn't it obvious that its interest in that water is being adversely affected? No, it's not obvious, Your Honor. Why? If it were obvious, we wouldn't have a district court decision finding a lack of standing. Their standing was challenged and their response... No, that's not... Well, there's... It's just that court, you know, may be in error. That's the argument. Well, but that doesn't... I mean, I think to make the point, the cases where standing might be self-evident, Your Honor, I mean, largely those are in a petition for review context where it's the first briefing in this Court. But certainly where a litigant's standing is challenged at the summary judgment stage, that litigant has an obligation to establish by evidence what the injury is. A diversion in and of itself is not an injury. You know, in this Court's, you know, standard... Well, Benson is that, you know, they have to meet an injury in fact for purposes of a NEPA claim, which is, you know, the plaintiff must demonstrate that the omission or insufficiency of an EIS may cause the injury to overlook the condition of a demonstrable risk. So you're back to my hypothetical encounter. It's only a bucket. There's no injury. They have... I mean, Benson requires a serious environmental injury, Your Honor. But we don't even have... I mean, there needs to be some indication that the diversion will cause a serious environmental harm to the plaintiff. There is no case supporting the proposition that a mere diversion of water, if it... The thing that's absent there is the harm. You know, there's... You made that argument in your brief that even if Master EPA has a parent's patriotic theory that they didn't do enough work in their affidavits? Absolutely, we made that argument in our brief, yes. We've absolutely made that argument. I mean, briefly, Your Honor, they've made this argument for the first time in their reply brief and focused on it at this Court, but somehow the existence of an injunction gives them standing. That has been forfeited. They did not raise it properly. But, you know, in the reply brief, they looked at one of the state versus state cases where standing wasn't challenged. So a lot of times, of course, if standing isn't raised or challenged, it's clearly not persuasive. They've also made the point, I'd like to briefly address it, it would be pointless for the Court to affirm because they could just file a suit again. And that is wrong because the issue preclusion... Issue preclusion, we can cite the court to National Association of Home Builders versus EPA, but issue preclusion apprised to standing subject to a narrow exception in the event a material change occurred after the district court's dismissal that would cure the jurisdictional defect. Litigants are not permitted to re-litigate jurisdictional issues based on facts that existed before the original dismissal because that would undermine the conclusive effect of the district court's judgment. So I think they're wrong on that point as well. But we certainly have made, you know, there are multiple problems with this case, with their standing theory, Judge Srinivasan. One, you know, no case that we have found, you know, has held, you know, that since MassVPA that we've found that that case stands for the proposition that a parent's patriae injury in and of itself is sufficient. There's no case finding that. This Court's longstanding precedent is very clear. It's a very narrow exception. And there's no reason to broaden it here. Massachusetts versus EPA doesn't support this conclusion. The APA is a very broad statute and it doesn't support this conclusion either. And then even beyond the problems with their theory, they simply have not met their burden. I mean, patently have not met their burden. You know, they did not raise injuries to sovereign or proprietary interests in the district court. And they pointed it to their complaint, which is just a bare allegation of harm to their citizens that is not explained. And that is insufficient under this Court's law any way that you look at it. All right. Thank you. Thank you. Does Mr. Devine have any time? Okay. May it please the Court. There seems to be some confusion over what a quasi-sovereign interest is. When the State has a quasi-sovereign interest, it has its own independent interest in both the health and welfare of the citizens and in securing for those citizens compliance with Federal law. So when reclamation, as the district court found, violates NECOD, then the citizens have their own interest in that. But the State also has its interest in securing for citizens compliance with Federal law. And on top of that, the State plainly has its own interest in not having a massive diversion of water. They try to understate the scope of this, but in North Dakota's briefing, they say that this is necessary to their, quote, way of life and that it will bring water to 80,000 different people. A couple other things. Center for Biological Diversity does not weigh against us. In fact, it weighs in favor of us. On page 477 of that opinion, the Court says that, the Court recognizes that the bar against parents' patriae suits is not a categorical bar. It is a, quote, general rule. And then in the same paragraph, they recognize that Massachusetts against EPA was a parents' patriae suit. It says that Massachusetts was allowed to sue to vindicate its quasi-sovereign interest against the EPA. Moreover, the problem with the tribe of Point Hope was not that this rule doesn't exist, but that they hadn't identified any particularized injury. Their injury was entirely generalizable. The only harm to any physical land that they asserted was harm to the outer continental shelf, which is federal land, not tribal land. Here we have asserted, and in fact is undisputed and admitted by the other side, that this will divert billions of gallons of water every year from Missouri, you know, through eternity, essentially. As for the injunction argument, although we did discuss that for the first time in our reply brief, we stated it in response to the argument that they made in their response brief to trying to distinguish Nebraska against Wyoming. Indeed, Nebraska against Wyoming is a case where the U.S. Supreme Court held that a state could bring a parents' patriae suit against the federal government. They try to say it's not, but twice the Supreme Court has reiterated and recognized the case as a parents' patriae case. That's in Massachusetts against EPA, footnote 17, and in the Arizona State Legislature case, footnote 10. But you need to wind it up. Yes. So I've articulated four different ways why this court should reverse. Three of those don't even require this court to address the Massachusetts against EPA issue. Thank you, Your Honors.
judges: Henderson, Rogers, Srinivasan